UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ANTONIO SAUNDERS,

                         Plaintiff,

            v.                                                    9:03-CV-0598
                                                                  (DNH/GHL)
SUPERINTENDENT RICKS; COMMISSIONER
GOORD; CAPTAIN RACETTE; LT. UHLER;
SGT. SINICAL; OFFICER COOK; OFFICER
WOODS; NURSE BUFFHAM; JOHN DOE,
Officer; NURSE RUSHFORD,

                         Defendants.

_____

APPEARANCES:                                          OF COUNSEL:

ANTONIO SAUNDERS, *Pro Se*
658 Trails Lane
Newport News, Virginia 23608

HON. ELIOT L. SPITZER                                 PATRICK F. MACRAE, ESQ.
Attorney General for the State of New York            ED J. THOMPSON, ESQ.
  Counsel for Defendants                              Assistant Attorneys General
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

_____This matter has been referred to me for Report and Recommendation by the Honorable

David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule

N.D.N.Y. 72.3(c).  In this *pro se* civil rights action brought under 42 U.S.C. § 1983, Antonio

Saunders ("Plaintiff") alleges that, while he was incarcerated at Upstate Correctional Facility

("Upstate C.F.") from July of 1999 to June of 2000, ten employees of the New York State

Department of Correctional Services ("DOCS") violated various of Plaintiff's rights under the

Eighth and Fourteenth Amendments.  (Dkt. No. 6 [Plf.'s Am. Compl.].)  More specifically,

Plaintiff alleges that DOCS Commissioner Glenn Goord, Upstate C.F. Superintendent Thomas

Ricks, Upstate C.F. Captain S. Racette, Upstate C.F. Lt. D. Uhler, Upstate C.F. Sgt. Sinical,

Upstate C.F. Officer D. Cook, Upstate C.F. Officer Woods, Upstate C.F. Nurse D. Buffham,

Upstate C.F. Nurse M. Rushford, and an unidentified "John Doe" Correctional Officer

("Defendants") violated Plaintiff's rights in the following ways: (1) by recklessly failing to

protect Plaintiff from his cellmate, Inmate Ronald Lynch; (2) by being deliberately indifferent to

Plaintiff's serious injuries sustained during an attack by Inmate Lynch in May of 2000; (3) by

intentionally or recklessly injuring Plaintiff's fingers through closing a cell-door's "feed up

hatch" on them in May of 2000; and (4) by depriving him of a fair and impartial hearing officer

in a disciplinary hearing in May of 2000 on a false misbehavior report.  (*Id.*)

Currently before the Court is Defendants' motion for summary judgment.  (Dkt. No. 49.)

Generally, Defendants' motion raises the following four issues: (1) whether Plaintiff has failed to

establish (or even state) an Eighth Amendment claim against Defendants Goord, Ricks and

Racette for recklessly failing to protect him from Inmate Lynch; (2) whether Plaintiff has failed

to establish (or even state) an Eighth Amendment claim against Defendants Sinical, Woods,

Buffham and Rushford for being deliberately indifferent to his serious medical needs; (3)

whether Plaintiff has failed to establish (or even state) an Eighth Amendment claim against

Defendant Cook for injuring Plaintiff's fingers in the feed up hatch; and (4) whether Plaintiff has

failed to establish (or even state) a Fourteenth Amendment claim against Defendant Uhler for

being biased during Plaintiff's disciplinary hearing.  (Dkt. No. 49, Part 3 [Defs.' Mem. of Law].)

For the reasons discussed below, I answer each of the foregoing questions in the affirmative.  As

2

a result, I recommend that Defendants' motion for summary judgment be granted.

## I.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[2]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).[3]  The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[4] "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

---

[1]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

[2]    *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[3]    *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[4]    *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[5]    *Ross v. McGinnis*, 00 Civ. 0275, 2004 WL 1125177, *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

Imposed over this general burden-shifting framework is the generous perspective with which the Court generally views a *pro se* civil rights plaintiff's papers.[6]  For example, where a civil rights plaintiff is proceeding *pro se*, and the defendant has filed a dispositive motion, generally the Court must construe the plaintiff's complaint and opposition papers liberally so as to raise the strongest arguments that they suggest.[7]

Having said that, "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment."[8]  Moreover, "there are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded such special solicitude."[9]  I note that, in such cases, the overly

---

[6]   *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* civil rights action); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (*pro se* civil rights action); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460,  467 (S.D.N.Y. 1998) (*pro se* civil rights action), *aff'd in part*, *vacated in part on other grounds*, 205 F.3d 1324 (2d Cir. 2000) (unpublished decision).

[7]   *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (motion for summary judgment in civil rights case).

[8]   *Bussa v. Aitalia Line Aeree Italiane S.p.A.*, 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord*, *Durran v. Selsky*, 251 F. Supp.2d 1208, 1211 (W.D.N.Y. 2003) [citations omitted].  For example, although "[t]he work product of *pro se* litigants should be generously and liberally construed, . . . [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual."  *Kadosh v. TRW, Inc.*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

[9]   *See, e.g.*, *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 & n.2 (N.D.N.Y. June 22, 2006) (McAvoy, J; Lowe, M.J.) (plaintiff had filed at least 20 actions in Northern District of New York and five other actions in Southern District of New York); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *19 & n.10 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 actions in the Northern District of New York alone); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (N.D.N.Y. March 31, 2005)

4

litigious inmate is not being denied this special solicitude or status as a form of punishment for

his litigiousness but as a form of recognition of his obvious litigation experience (and the lack of

need for special solicitude).[10]

Here, after carefully considering the matter, I conclude that Plaintiff's litigation

experience warrants denying him the special solicitude or status normally afforded *pro se* civil

rights litigants.  In addition to the current action, Plaintiff previously filed at least six federal

district court actions, and two federal appeals, in this Circuit within an eight-year period.[11]

_____

(Treece, M.J.) (plaintiff had filed 20 actions in Northern District alone of New York); s*ee also Johnson v. Eggersdorf*, 8 Fed. Appx. 140, 143 (2d Cir. May 17, 2001) (unpublished opinion) (plaintiff at one point had 12 simultaneously pending lawsuits in Northern District alone), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. May 28, 1999) (Kahn, J.), *adopting*, 97-CV-0938, Report-Recommendation, at 1, n.1 (N.D.N.Y. Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431 (2d Cir. 1999) (plaintiff at one point had 12 simultaneously pending lawsuits in Northern District alone), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. June 11, 1999) (McAvoy, J.), *adopting*, 97-CV-1727, Report-Recommendation (N.D.N.Y. April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (plaintiff at one time had at least 30 simultaneously pending lawsuits); *Davidson v. Dean*, 204 F.R.D. 251, 257 (S.D.N.Y. 2001) (plaintiff at one point had 30 simultaneous pending suits); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000) (plaintiff had 10 suits pending in district); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2, 8-10 (S.D.N.Y. March 29, 1999) (court found 79 reported decisions of cases that plaintiff had filed during previous 43 years); *Brown v. McClellan*, 93-CV-0901, 1996 U.S. Dist. LEXIS 8164, at *3-4, & n.3, 1996 WL 328209 (W.D.N.Y. 1996) (plaintiff had filed seven previous lawsuits against prison officials); *Brown v. Selsky*, 93-CV-0268, 1995 U.S. Dist. LEXIS 213, at *2, n.1, 1995 WL 13263 (W.D.N.Y. Jan. 10, 1995) (plaintiff had seven cases pending in district).

[10]       *See*, *supra*, note 9 (citing cases discussing rationale for denying special status to overly litigious *pro se* litigants).

[11]       Specifically, he has filed the following six actions: (1) *Saunders v. Suarez*, 94-CV-3845, a prisoner civil rights action filed on 8/17/94 in the Eastern District of New York; (2) *Saunders v. Noble*, 96-CV-9347, a prisoner civil rights action filed on 11/10/98 in the Southern District of New York; (3) *Saunders v. Goord*, 98-CV-8501, a prisoner civil rights action filed on 12/2/98 in the Southern District of New York; (4) *Saunders v. Artuz*, 99-CV-0354, a *habeas corpus* proceeding filed on 1/19/99 in the Southern District of New York; (5) *Saunders v. City of New York*, 01-CV-6045, a prisoner civil rights action filed on 9/5/01 in the Eastern District of

Furthermore, two of these actions were successful inasmuch that Plaintiff recovered $25,000 in

exchange for his agreement to voluntarily dismiss the actions.[12]  Moreover, with regard to the

current action, I note that the motion papers that Plaintiff has submitted over the past several

years have often been fairly good–being typed, being accompanied by affidavits, and containing

legal memoranda, exhibits, etc.[13]  As a result, some of Plaintiff's motions have been granted.[14]

Also militating in favor of a finding that Plaintiff is not in need of the special status normally

afforded to *pro se* litigants is the fact that he has apparently benefitted from the legal assistance

of a "jailhouse lawyer," as he puts it.[15]

---

New York; and (6) *Saunders v. Dunkin*, 02-CV-0292, a *habeas corpus* proceeding filed on
1/11/02 in the Eastern District of New York.  Moreover, he filed the following two appeals: (1)
*Saunders v. Dunkin* on 4/12/02 (which appeal was dismissed on 6/24/02); and (2) *Saunders v.
City of New York* on 10/26/01 (which appeal was dismissed on 1/16/02).  While I do not rely on
this fact in reaching my conclusion that Plaintiff should be denial the special status normally
afforded to *pro se* litigants, I cannot help but note that, in his response to one of Defendants'
interrogatories in this action, Plaintiff apparently misrepresented the number of other lawsuits he
had previously filed, failing to identify four of those lawsuits.  (Dkt. No. 49, Part 6, at Ex. B-5
[Plf.'s response to Defs.' Interrogatory No. 9, in which Plf. swore that the only other lawsuits that
he had filed before July 16, 2004, were *Saunders v. Suarez*, 94-CV-3845, and *Saunders v. Goord*,
98-CV-8501].)

[12]    Specifically, in *Saunders v. Suarez* (E.D.N.Y.) and *Saunders v. Noble* (S.D.N.Y.)
Plaintiff received $25,000 pursuant to settlement agreements.  *See Saunders v. Suarez*, No. 94-
CV-3845 (E.D.N.Y. Feb. 2. 1999) (Stipulation and Order of Dismissal Pursuant to Settlement);
*Saunders v. Noble*, No. 96-CV-9347 (S.D.N.Y. Jan. 28, 1999) (Stipulation and Order of
Dismissal Pursuant to Settlement); Dkt. No. 49, Part 6, at Ex. B-5 [Plf.'s response to Defs.'
Interrogatory No. 9, in which Plf. states, "I filed one 1983 civil suit in 1994 in the Eastern
District of New York which was settled."].)

[13]    (*See*, *e.g.*, Dkt. Nos. 26, 30, 56.)

[14]    (*See*, *e.g.*, Dkt. No. 34.)

[15]    (Dkt. No. 50 [Order of 4/4/05 rejecting Plf.'s motion to compel, in which Plf.
asserts that he was being assisted by a "Jail House Lawyer Todd Chaney"].)  *See* John C.
Rothermich, "Ethical and Procedural Implications of "Ghostwriting" for *Pro Se* Litigants:

Finally, I note that Plaintiff appears to have two "strikes" against him for purposes of 28 U.S.C. § 1915(g)'s "three strikes" rule.[16]

## II.   STATEMENT OF MATERIAL FACTS

The facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record[17] and are not specifically controverted by the non-movant.[18]   A district court has no duty to perform an

---

Toward Increased Access to Civil Justice," 67 *Fordham L. Rev.* 2687, 2697 (Apr. 1999) (arguing that, when the papers of a *pro se* litigant are "ghostwritten" by a legal assistant, the "special leniency" normally afforded to *pro se* litigants is "unwarranted") [citations omitted].

[16]        28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or appeal a judgment under this section [enabling the prisoner to proceed *in forma pauperis*] if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."); *see Saunders v. Dunkin*, 02-CV-0292 (E.D.N.Y.) (Order dated 3/19/02 granting Defs.' motion to dismiss Plf.'s *habeas corpus* petition for failure to state a claim based on untimeliness); *Saunders v. City of New York*, 01-CV-6045 (E.D.N.Y.) (Order dated 10/17/01 granting Defs.' motion to dismiss Plf.'s civil rights complaint for failure to state a claim based on qualified immunity).

[17]        *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245 (2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden . . . , the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see*, *e.g.*, *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

[18]        *See* Local Rule 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.").

independent review of the record to find proof of a factual dispute.[19]  In the event the district

court chooses to conduct such an independent review of the record, it may review any verified

complaint (which, of course, is treated as an affidavit) for proof of a factual dispute.[20]  Here, I

note that Plaintiff's Second Amended Complaint is not verified.  (Dkt. No. 8.)

Furthermore, to be sufficient to create a factual issue, an affidavit must, among other

things, be based "on personal knowledge."[21]  An affidavit is not based on personal knowledge if,

for example, it is based on mere "information and belief" or hearsay.[22]  In addition, such an

---

[19]      *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002)
("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an
obligation on a district court to perform an independent review of the record to find proof of a
factual dispute.") (citations omitted); *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App.
LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-
13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v.
Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy,
J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295
(N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v.
Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[20]      *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A]
verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary
judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff
"was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert.
denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified
complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted];
Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if the . . . affidavits . . .
show that there is no genuine issue as to any material fact . . . .").

[21]      Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on
personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show
affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private
Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations
omitted], *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

[22]      *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be
made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . .
[Furthermore, the Rule's] requirement that the affiant have personal knowledge and be

affidavit must not be conclusory.[23]  An affidavit is conclusory if, for example, its assertions lack

any supporting evidence or are too general.[24]  Moreover, "[a]n affidavit must not present legal

arguments."[25]

Finally, even where an affidavit is based on personal knowledge and is nonconclusory, it

may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other

competent to testify to the matters asserted in the affidavits also means that the affidavit's
hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient
to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d
Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon
information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's]
affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is
insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top
Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor
and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting
affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[23]      *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts
showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor
is a genuine issue created merely by the presentation of assertions [in an affidavit] that are
conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule
56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from
degenerating into mere elaboration of conclusory pleadings").

[24]      *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy,
C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition
testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are
insufficient to defeat a properly supported motion for summary judgment.") [citations omitted];
*West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting
affidavit's conclusory statements that, in essence, asserted merely that there was a dispute
between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759
F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about
Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was
conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S.
829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit]
with the characters and plot line for a novel of intrigue rather than the concrete particulars which
would entitle him to a trial.").

[25]      N.D.N.Y. L.R. 7.1(a)(2).

9

direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[26]

## III.    ANALYSIS

### A.    Whether Plaintiff Has Failed to Establish (or Even State) an Eighth Amendment Claim Against Defendants Goord, Ricks and Racette for Recklessly Failing to Protect Him from Inmate Lynch

The Eighth Amendment imposes on prison officials "a duty . . . to protect prisoners from violence at the hands of other prisoners."[27]  Accordingly, "[a] prisoner injured while in custody may recover for violations of his Eighth Amendment rights if the injury resulted from the

---

[26]    *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-555 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 Fed. Appx. 383 (2d Cir. 2005) (unreported decision).

[27]    *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 [1994]).

defendant prison official's purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk."[28]  "A showing of deliberate indifference requires (1) demonstrating that the conditions of incarceration pose a substantial risk of serious harm, and (2) establishing that the "prison officials possessed sufficient culpable intent."[29]  Culpable intent exists where a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm."[30]

Here, I realize that "[n]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."[31] However, in the interest of keeping this Report-Recommendation brief, I will assume for the sake of argument that Plaintiff has adduced sufficient evidence to create an issue of fact as to whether or not he was incarcerated under conditions posing a substantial risk of serious harm.[32]

---

[28]    *Fischl*, 128 F.3d at 55 (citing *Farmer*, 511 U.S. at 834 and *Weyant v. Oost*, 101 F.3d 845, 856 [2d Cir. 1996]).

[29]    *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 834).

[30]    *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 834); *see also Rivera v. Senkowski*, 62 F.3d 80, 84-85 (2d Cir. 1995) (deliberate indifference requires an objective component that the alleged deprivation is sufficiently serious, and a subjective component that the charged official, at a minimum, knew of and disregarded an excessive risk to inmate health or safety).

[31]    *Farmer*, 511 U.S. at 834.

[32]    *See, e.g.*, *King v. Department of Corr.*, 95-CV-3057, 1998 WL 67669, at *5 (S.D.N.Y. Feb. 18, 1998) (inmate who, during attack by fellow inmate, received 12-13 stitches for cuts to the face, neck, and shoulder fulfilled objective requirement of Eighth Amendment test); *Knowles v. New York City Dep't of Corr.*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (inmate who, during attack by fellow inmate using a sharp object, sustained a cut to the face requiring

Specifically, I note that the record evidence indicates that, following the alleged attack by Inmate

Lynch on or about May 16, 2000, Plaintiff was suffering from a fracture on the "tip" of his nose,

a bruise below both eyes, a dime-sized abrasion on his nose, a golf-ball sized swelling on the left

side of his head, a two-inch bite-mark on his left bicep, a four-and-one-half-inch abrasion on his

back, and pain in his head.[33]

The issue, then, is whether Plaintiff has adduced sufficient evidence to create a question

of fact as to whether Defendants had the culpable intent necessary to sustain a claim of failure to

protect.  Again, in order to prevail in demonstrating a culpable state of mind, a plaintiff must

show both: (1) the defendant had actual knowledge of a substantial risk of harm to the plaintiff;

and (2) the defendant disregarded that risk by failing to take reasonable measures to abate the

harm.[34]  "One way to make out such a claim is to allege that 'a substantial risk of inmate attacks

was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,

and the circumstances suggest that the defendant official being sued had been exposed to

information concerning the risk and thus must have known about it.'"[35]  Courts routinely deny

---

sixty stitches, met the objective requirement of Eighth Amendment test).

[33]     (*Compare* Dkt. No. 49, Part 4, ¶¶ 15, 18, 26 [Defs.' Rule 7.1 Statement, asserting facts and citing record evidence supporting those facts] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶¶ 15, 18, 26 [not specifically denying relevant fact asserted in Paragraph 15, admitting facts asserted in Paragraph 18, and denying facts asserted in Paragraph 26 but citing no record evidence in support of that denial].)

[34]     *Farmer*, 511 U.S. at 837.

[35]     *Coronado v. Goord*, 99-CV-1674, 2000 WL 1372834, at *4 (S.D.N.Y. Sept. 25, 2000) (quoting *Farmer*, 511 U.S. at 842-43).

12

deliberate indifference claims based upon surprise attacks.[36]

Here, I find no evidence that either (1) any Defendant had actual knowledge of a substantial risk of harm to Plaintiff or (2) that any Defendant disregarded that risk by failing to take reasonable measures to abate the harm. The sole basis of any knowledge of a risk of harm in this case consists of three letters from Plaintiff to Defendants Goord, Ricks or Racette, and a memorandum from a correctional sergeant to Defendant Racette–all dated between six weeks and nine months before the alleged assault by Inmate Lynch on or about May 16, 2000.[37]

Defendants analyze these communications in some detail, concluding that none of them put Defendants Goord, Ricks and/or Racette on notice of an attack against Plaintiff by Inmate Lynch.[38]  Plaintiff, on the other hand, argues that the letters, when construed liberally and

---

[36]        *See, e.g., Zimmerman v. Macomber*, 95-CV-0882, 2001 U.S. Dist. LEXIS 12499, at *12-19 (S.D.N.Y. Aug. 21, 2001) (granting summary judgment for defendants based on unexpected attack on inmate); *Coronado*, 2000 WL 1372834, at *4 (dismissing complaint where officers unaware of earlier attacks on inmate at prior prison); *Grant v. Burroughs*, 96-CV-2753, 2000 WL 1277592, at *3 (S.D.N.Y. Sept. 8, 2000) (granting summary judgment for defendants based on unexpected attack on inmate after earlier argument); *King v. Dept. of Corr.*, 95-CV-3057, 1998 WL 67669, at *5-6 (S.D.N.Y. Feb. 18, 1998) (failure to protect from isolated attack, after threat from prison official, did not sustain § 1983 claim).

[37]        (Dkt. No. 49, Part 6, C-5 [Plf.'s letter of 8/8/99 to Def. Goord complaining of being placed in cell with Inmate Hodges, who was physically ill, and indicating that he had previously communicated this complaint to C.O. Jones], C-14 [Plf.'s letter of 8/16/99 to Def. Ricks complaining of being placed in cell with Inmate Hodges, who allegedly had been told by someone that Plf. was a snitch], C-9 [Plf.'s letter of 9/19/99 to Def. Ricks complaining of being placed in cell with Inmate Speight, who allegedly had been told by someone that Plf. was a snitch], C-12 [Plf.'s letter of 3/26/00, erroneously dated 11/26/00, to Def. Racette complaining about his cell's proximity to the cells of Inmates Roddick and Corss, whom Plf. claimed were his enemies], C-10 [memorandum of 3/29/00 from Sgt. Barker to Def. Racette stating that Plf. had complained on 3/24/00 about being exposed to members of the "Bloods" gang, but that Sgt. Barker had investigated the complaint and found its basis to be "sketchy at best"].)

[38]        (*See, e.g.,* Dkt. No. 49, Part 3, at 8-9 [Defs.' Mem. of Law]; Dkt. No. 49, Part 4, ¶¶ 2, 3, 6, 10, 11, 12 [Defs.' Rule 7.1 Statement].)

considered together, show that Plaintiff had an extensive "enemy list" (due to Plaintiff's gang affiliation) and that Plaintiff needed to be placed in Protective Custody and/or in a single cell until a transfer to another facility could be arranged.[39]

First, there is no evidence of any prior problem between Plaintiff and *Inmate Lynch* of which any Defendant was or should have been aware.  For example, setting aside the considerable length of time between Plaintiff's prior letters and the incident in question, none of the communications in question mention Inmate Lynch.  Moreover, Plaintiff has not cited any evidence (nor even alleged or argued) that Defendants Goord, Ricks or Racette should have known, before May 16, 2000, that Inmate Lynch bore, or would bear, Plaintiff any animosity (e.g., that Inmate Lynch was a member of "the Bloods" gang, that Inmate Lynch believed Plaintiff to be a "snitch," or that Inmate Lynch had previously attacked fellow cell mates).

Second, even if Plaintiff's letters to these Defendants could have, when construed liberally and considered together, constituted reason to believe that Plaintiff might be attacked by a future cell mate, these Defendants can reasonably be held to be "on notice" only of letters that were addressed to them or read by them.  Here, each of Plaintiff's letters was addressed to only one Defendant (and not the other two Defendants); and no evidence exists that more than one of the three Defendant read any of the letters (if any of the three Defendants read those letters). While Plaintiff may believe that those three Defendants were negligent in the performance of their duties, such negligence is not actionable under 42 U.S.C. 1983.[40]  Even a conclusion of

---

[39]     (Dkt. No. 56, Plf.'s Mem. of Law, at 4-6.)

[40]     *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.").

14

negligence would be extremely difficult to reach under the circumstances, in which, prior to May 16, 2000, each time Plaintiff complained about his cell assignment, he was promptly moved.

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendants Goord, Ricks or Racette for failing to protect him from Inmate Lynch.

**B.     Whether Plaintiff Has Failed to Establish (or Even State) an Eighth Amendment Claim against Defendants Sinical, Woods, Buffham and Rushford for Deliberate Indifference to Plaintiff's Serious Medical Needs**

Defendants recite the correct legal standard that governs Plaintiff's claim of inadequate medical care under the Eighth Amendment.  Generally, to prevail on such a claim, Plaintiff must show two things: (1) that Plaintiff had a sufficiently serious medical need; and (2) that Defendant was deliberately indifferent to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

**1.     Serious Medical Need**

As discussed earlier in Part III.A. of this Report-Recommendation, following the alleged attack on Plaintiff by Inmate Lynch on or about May 16, 2000, Plaintiff was suffering from a fracture on the "tip" of his nose, a bruise below both eyes, a dime-sized abrasion on his nose, a golf-ball sized swelling on the left side of his head, a two-inch bite-mark on his left bicep, a four-and-one-half-inch abrasion on his back, and pain in his head.[41]  Conspicuously absent from Plaintiff's medical records are any notations of medical staff, during the time in question, reporting complaints by Plaintiff of the sort of "severe" (or "extreme," "agonizing,"

---

[41]     (*Compare* Dkt. No. 49, Part 4, ¶¶ 15, 18, 26 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶¶ 15, 18, 26].)

15

"excruciating," etc.) pain[42] that would be necessary to elevate Plaintiff's medical condition to one of constitutional dimensions.[43]   However, in the interest of keeping this Report-Recommendation brief, I will assume for the sake of argument that Plaintiff has adduced sufficient evidence to create an issue of fact as to whether or not he was suffering from a medical need that was sufficiently serious for purposes of the Eighth Amendment.

### 2.    Deliberate Indifference

The problem with Plaintiff's Eighth Amendment claim is that he has adduced no evidence that Defendants Sinical, Woods, Buffham and Rushford acted with the sort of *criminal recklessness* necessary to impose on them liability under 42 U.S.C. § 1983.[44]   Indeed, the available evidence indicates that the medical staff at Upstate C.F. promptly and continuously examined Plaintiff and treated his injuries.

For example, the uncontroverted evidence indicates that, after the alleged attack on May 16, 2000, an examination of Plaintiff (or an attempted examination of Plaintiff) occurred at the following times: (1) approximately 6:30 a.m. on May 17, 2000, by Defendant Buffham; (2)

---

[42]     (Dkt. No. 49, Part 6, at Ex. D [Plf.'s medical records].)

[43]     *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (standard contemplates "a condition of urgency, one that may produce death, degeneration or extreme pain") [citation omitted].

[44]     *See Farmer v. Brennan*, 511 U.S. 825, 827 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a claim of deliberate indifference to a serious medical need under the Eighth Amendment is] equivalent to criminal recklessness . . . ."); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .").

approximately 1:00 p.m. on May 17, 2000, by Defendant Buffham; (3) 4:00 p.m. on May 17,

2000, by Defendant Rushford; (4) 6:15 a.m. on May 18, 2000, by another nurse; (5) 11:45 a.m.

on May 18, 2000, by Defendant Rushford and another nurse; (6) approximately 6:30 a.m. on May

19, 2000, by Defendant Buffham; and (7) 6:21 a.m. on May 20, 2000, by another nurse.[45]

Furthermore, the uncontroverted evidence indicates that, after the alleged attack on May 16,

2000, Plaintiff's treatment included the following: (1) four packets of pain medication and a cold

compress at approximately 6:30 a.m. on May 17, 2000, by Defendant Buffham; (2) a tetanus shot

at 11:45 a.m. on May 18, 2000, by Defendant Rushford; (3) four packets of pain medication and

multiple packets of bacitracin (a topical antibiotic ointment) at approximately 6:30 a.m. on May

19, 2000, by Defendant Buffham; and (4) an x-ray examination of his nose at some point

between May 20, 2000, and June 5, 2000.[46]  These persistent efforts by the medical staff at

Upstate C.F. to examine and treat Plaintiff are particularly impressive when one considers

Plaintiff's numerous refusals to accept such examinations and treatment.[47]

      At most, there is evidence of a difference of opinion between Plaintiff and Defendants

Buffham or Rushford, or *conceivably* a hint of negligence on the part of Defendants Buffham or

Rushford.  However, neither a difference of opinion nor negligence would be enough to make

---

[45]      (Dkt. No. 49, Part 6, at Ex. D [Plf.'s medical records]; *compare* Dkt. No. 49, Part
4, ¶¶ 15, 17-21, 26 [Defs.' Rule 7.1 Statement, asserting facts and citing record in support of
those facts] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶¶ 15, 17-21, 26 [admitting various of
the asserted facts, or failing to specifically deny various of the asserted facts, or specifically
denying various of the asserted facts but failing to cite record in support of such denials].)

[46]      (*Id.*)

[47]      (*Id.* [indicating Plf.'s refusal to accept Tylenol at approximately 6:30 a.m. on May
17, 2000, his refusal to be examined at approximately 1:00 p.m. on May 18, 2000, and his refusal
to have his nose x-rayed at 11:45 a.m. on May 18, 2000].)

any medical staff member of Upstate C.F. liable to Plaintiff under the Eighth Amendment.[48]

(This is especially true of Defendants Sinical or Woods, who have not been shown to be

personally involved in the alleged Eighth Amendment deprivation.)[49]  As the Second Circuit has

explained,

> It must be remembered that the State is not constitutionally obligated,
> much as it may be desired by inmates, to construct a perfect plan for
> [medical] care that exceeds what the average reasonable person would
> expect or avail herself of in life outside the prison walls.  [A]
> correctional facility is not a health spa, but a prison in which convicted
> felons are incarcerated.  Common experience indicates that the great
> majority of prisoners would not in freedom or on parole enjoy the
> excellence in [medical] care which plaintiff[] understandably seeks
> . . . .  We are governed by the principle that the objective is not to
> impose upon a state prison a model system of [medical] care beyond
> average needs but to provide the minimum level of [medical] care
> required by the Constitution. . . .  The Constitution does not command
> that inmates be given the kind of medical attention that judges would
> wish to have for themselves . . . .  The essential test is one of medical
> necessity and not one simply of desirability.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations

omitted].

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim

---

[48]    *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician
has been negligent in diagnosing or treating a medical condition does not state a valid claim of
medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a
constitutional violation merely because the victim is a prisoner."); *Chance v. Armstrong*, 143
F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper
treatment does not create a constitutional claim.  So long as the treatment given is adequate, the
fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment
violation.").

[49]    Even if the medical staff at Upstate C.F. did not adequately treat Plaintiff, there is
no evidence that either Defendant Sinical (a correctional sergeant) or Defendant Woods (a
correctional officer) had anything to do with such inadequate treatment.

against Defendants Sinical, Woods, Buffham and Rushford for deliberate indifference to a serious medical need.

### C.     Whether Plaintiff Has Failed to Establish (or Even State) an Eighth Amendment Claim Against Defendant Cook for Injuring Plaintiff's Fingers

Defendants argue that (1) Plaintiff has failed to establish the objective element of an Eighth Amendment excessive force claim because he has failed to establish that the incident in which his hand was (allegedly) caught in the "feed up hatch" caused him anything more than *de minimis* pain or injury, and (2) in any event, Plaintiff has failed to establish the subjective element of an Eighth Amendment excessive force claim because he has failed to establish that Defendant Cook acted maliciously and sadistically in (allegedly) closing the feed up hatch on Plaintiff's hands.  (Dkt. No. 49, Part 3, at 17-18.)  Plaintiff responds that (1) his pain and injuries were more than *de minimis* in that the injuries caused his hand to bleed and required the application of antibiotic ointment, and (2) Defendant Cook's malice and sadism are evidenced by the fact that he laughed after "slamming" the feed up hatch on Plaintiff's hand.  (Dkt. No. 56, Mem. of Law, at 11-12.)

Several problems exist with Plaintiff's argument.  Plaintiff's argument regarding the nature of his hand pain and injuries is not supported by the available record.  Indeed, the current record highlights the minimal nature of any pain or injury to Plaintiff's hand.  Specifically, Plaintiff's medical records show that, approximately five and a half hours after the alleged incident with the feed up hatch at 6:15 a.m. on May 18, 2000, Plaintiff's hand was examined by Defendant Rushford and another nurse for his complaints of finger injury.  After that examination, Defendant Rushford and the other nurse noted the following findings: (1) Plaintiff

was moving all of his digits with purpose, and his hand exhibited a good range of motion; (2) his

"capillary refill" was "brisk," and his fingers were "pink & warm"; (3) there was no swelling or

bleeding; (4) he had, on his left index and middle fingers, "pinhead sized" areas, which appeared

to be old due to the fact that there were scabs present; and (5) he was not complaining of pain or

discomfort.[50]  As the Sixth Circuit found with regard to similar injuries sustained by an inmate

after his hand was caught in a "feed up" hatch, I find that such injuries are, as a matter of law, *de

minimis* for purposes of an Eighth Amendment excessive force claim.  *See Owens v. Johnson*,

No. 99-2094, 2000 U.S. App. LEXIS 15541, at *6 (6th Cir. June 23, 2000) (affirming district

court's grant of summary judgment to defendants on inmate's Eighth Amendment claim because

corrections officer's use of force in closing of "feed up tray" caused *de minimis* injury to inmate's

hand).[51]

     Of course, that does not end the Eighth Amendment inquiry, since the ultimate issue is

whether a particular use of force was wanton and unnecessary–i.e., excessive.  Therefore, the

Court should also consider "the need for application of force, the relationship between that need

and the amount of force used, [any] threat reasonably perceived by [Defendant], and any effort

made to temper the severity of a forceful response."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)

---

[50]     (Dkt. No. 49, Part 6, at Ex. D-4, D-7 [Plf.'s medical records]; *compare* Dkt. No. 49, Part 4, ¶ 20 [Defs.' Rule 7.1 Statement, asserting facts at issue] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶ 20 [not specifically controverting facts at issue].)

[51]     *See also Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) ("That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. . . .  The Eighth Amendment's prohibition of 'cruel and unusual punishment' necessarily excludes from constitutional recognition *de minimis* uses of force, provided that the use of such force is not of a sort 'repugnant to the conscience of mankind.'"); *see, e.g., Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001) (finding no Eighth Amendment violation where use of force caused superficial injury to prisoner's hand).

[internal quotation marks and citation omitted]; *see also Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

Here, the uncontroverted record evidence establishes the following facts: (1) at approximately 6:15 a.m. on May 18, 2000, Plaintiff's medical visit was terminated because he had become "belligerent and boisterous" and had "grabb[ed] at the feedup tray"; (2) after Defendant Cook had closed the feed up hatch and walked away, Plaintiff complained that his medication (apparently some aspirin) was stuck in the feed up hatch; (3) Defendant Cook returned and opened the feed up hatch so that Plaintiff could retrieve his medication; (4) as Plaintiff was retrieving his medication, he stated to Defendant Cook words to the effect of "I'm gonna fuck you up, you fucking cracker," whereupon Defendant Cook closed the feed up hatch; and (5) during the final closing of the feed up hatch, Plaintiff's hand was struck by the feed up hatch.[52]

It is undisputed that the feed up hatch eventually needed to be closed.  Plaintiff argues, rather, that (1) Defendant Cook intentionally closed the feed up hatch on Plaintiff's hand, and (2) indeed, Defendant Cook "slammed" the feed up hatch, that is, he closed the feed up hatch with unnecessary force.  Conspicuously missing from Plaintiff's argument is any citation to a

---

[52]     (*See* Dkt. No. 49, Part 6, Exs. D-3, C-28, C-29, C-30, C-32; *compare* Dkt. No. 49, Part 4, ¶ 19  [Defs.' Rule 7.1 Statement, containing record citations supporting the facts asserted] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶ 19  [not providing any record citations in support of any denials of the facts asserted by Defendants]; *see also* Dkt. No. 8, ¶ 21 [Plf.'s Second Am. Compl., in which he acknowledged cursing at Def. Cook, calling him a "stupid fuck"]; Dkt. No. 56, Plf.'s Affid. in Opp., ¶ 30 [swearing that "as plaintiff reached for the medication left there by the nurse, Defendant Cook slammed the feed-up slot closed on his hand and then laughed," but not denying uttering abusive or menacing words to Def. Cook *before* Def. Cook closed the feed-up slot, and basing his inference that Def. Cook *intended* to catch Plaintiff's hand in the feed-up slot solely on the alleged fact that Def. Cook laughed afterward].)

corroborating affidavit from one of the "prisoners who [were] double-bunked on the same gallery,"[53] or an inculpatory interrogatory response or request-for-admission response from Defendant Cook (or Defendant Rushford, who was allegedly present at the time).[54]  Plaintiff's sole "evidence" that Defendant Cook intended to catch Plaintiff's hand in the feed up hatch is Plaintiff's brief sworn assertion that Defendant Cook "laughed" after the incident.[55]  While such laughter, if true, would certainly be unkind, it would not, under the circumstances, be unconstitutional.

This is because Defendant Cook's response to Plaintiff's (alleged) injury is only one of the factors to be considered under the above-described *Hudson* Eighth Amendment analysis. Among the other factors to be considered are the amount of force used and the need for that force (e.g., to prevent any threat reasonably perceived by Defendant).  As discussed earlier, Plaintiff's medical records (which show only a minimal injury, if any, to Plaintiff's hand) indicate that the force used to close the feed up hatch had also been minimal.[56]  Furthermore, the fact that Plaintiff was uttering menacing words at Defendant Cook at the time of the injury suggests that Defendant Cook closed the feed up hatch not with the intention of injuring Plaintiff's hand but the intention

---

[53]     (Dkt. No. 8, ¶ 16 [Plf.'s Second Am. Compl., referring to such other prisoners].)

[54]     (Dkt. No. 8, ¶ 21 [Plf.'s Second Am. Compl., alleging that Defendant Rushford was present at the time in question].)

[55]     (Dkt. No. 56, Plf.'s Affid. in Opp., ¶ 30 [swearing that "as plaintiff reached for the medication left there by the nurse, Defendant Cook slammed the feed-up slot closed on his hand and then laughed"].)  I note that, because Plaintiff's Second Amended Complaint is not verified, it does not have the effect of an affidavit.  (*See* Dkt. No. 8.)

[56]     *See Owens*, 2000 U.S. App. LEXIS 15541, at *6 ("While not dispositive of the issue, de minimis injuries suggest de minimis use of force by defendants.").

of blocking an aperture between himself and a convicted felon who was, at the time, harassing

him (and arguably threatening him).[57]

Balancing the amount of force used and the need for force under the circumstances, as

established by the available record, I find that no reasonable juror could find that Defendant

Cook had violated Plaintiff's Eighth Amendment rights.  I note that this Court reached a similar

conclusion approximately a decade ago under analogous circumstances, involving a correction

officer's accidentally closing of a "feed up" hatch on an inmate's hand at a time when the inmate

was not complying with the correction officer's directives.  *See Boyd v. Selmer*, 842 F. Supp. 52,

56-57 (N.D.N.Y. 1994) (McAvoy, J.).

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim

against Defendant Cook for injuring Plaintiff's fingers.

**D.      Whether Plaintiff Has Failed to Establish (or Even State) a Fourteenth
        Amendment Claim Against Defendant Uhler for Being Biased During
        Plaintiff's Disciplinary Hearing**

Defendants argue that this claim should be dismissed for two reasons: (1) Plaintiff failed

to exhaust his administrative remedies with respect to this claim in that he did not appeal

Defendant Uhler's disciplinary hearing decision; and (2) Plaintiff has adduced no evidence that

Defendant Uhler was so impartial as to present "a hazard of arbitrary decisionmaking."  (Dkt.

No. 49, Part 3, at 18-22 [Defs.' Mem. of Law].)  However, Plaintiff responds to only the second

---

[57]      I recognize that Plaintiff was ultimately not convicted of "threatening" Defendant
Cook pursuant to Disciplinary Rule 102.10 (only "harassing" Defendant Cook pursuant to
Disciplinary Rule 107.11).  (*See* Dkt. No. 49, Part 6, Exs. C-28, C-29, C-30, C-31.)  However,
such an acquittal, which could have been for any number of reasons, does not mean that
Defendant Cook did not, at the time in question, *reasonably* perceive Plaintiff's utterances to
constitute a threat, for purposes of the above-described *Hudson* Eighth Amendment analysis.

23

argument.  (Dkt. No. 56, Plf.'s Mem. of Law, at 13-14.)

### 1.    Failure to Exhaust Administrative Remedies

By failing to respond to Defendants' first argument (regarding Plaintiff's failure to

exhaust his administrative remedies), Plaintiff may be deemed to have *consented* to that

argument under Local Rule of Practice 7.1(b)(3).[58]  Thus, Plaintiff's claim against those

Defendants may be dismissed on that ground alone.[59]  Of course, a pre-requisite for basing a

decision to dismiss on this ground is a finding that Defendants have met their modest threshold

burden[60] to demonstrate entitlement to the relief requested in their motion for summary

judgment.[61]  Here, I make such a finding.

---

[58]    *See* N.D.N.Y. L. R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *cf.* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* . . . must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so *respond*, summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added].

[59]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]).

[60]    *See Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986)].

[61]    *See* N.D.N.Y. L. R. 7.1(b)(3) ("Where a properly filed motion is unopposed *and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein*, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be,

Specifically, I find that Defendants have adduced evidence, which is not controverted by Plaintiff, establishing the following facts: (1) Plaintiff was issued three misbehavior reports during the time in question–one by Defendant Cook, one by Sgt. Zerniak, and one by Defendant Buffham; (2) Lt. DuBray served as the hearing officer with respect to the misbehavior report issued by Defendant Cook, and Defendant Uhler served as the hearing officer with respect to the misbehavior reports issued by Sgt. Zerniak and Defendant Buffham; (3) in this action, Plaintiff challenges only the disciplinary hearing conducted by Defendant Uhler with respect to the misbehavior report issued by Defendant Buffham (since the disciplinary hearing conducted by Defendant Uhler with respect to the misbehavior report issued by Sgt. Zerniak did not result in a finding of guilt); and (4) while Plaintiff appealed the finding of guilt reached by Lt. DuBray (with respect to the misbehavior report issued by Defendant Cook), Plaintiff never appealed the finding of guilt reached by Defendant Uhler with respect to the misbehavior report issued by Defendant Buffham.[62]

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

---

unless good cause is shown.") [emphasis added].

[62]      (*Compare* Dkt. No. 49, Part 4, ¶¶ 15, 16, 19, 22-25, 27 [Defs.' Rule 7.1 Statement, containing record citations supporting the facts asserted] *with* Dkt. No. 56, Plf.'s Rule 7.1 Response, ¶¶ 15, 16, 19, 22-25, 27 [admitting and/or not specifically denying the relevant facts asserted by Defendants, and in any event providing no record citations for any denials of those facts].)

exhausted."[63]   The Department of Correctional Services ("DOCS") has available a well-established three-step grievance program:

> First, an inmate is to file a complaint with the Grievance Clerk.  An inmate grievance resolution committee ("IGRC") representative has seven working days to informally resolve the issue.  If there is no resolution, then the full IGRC conducts a hearing and documents the decision.  Second, a grievant may appeal the IGRC decision to the superintendent, whose decision is documented.  Third, a grievant may appeal to the central office review committee ("CORC"), which must render a decision within twenty working days of receiving the appeal, and this decision is documented.[64]

DOCS also has a separate and distinct administrative appeal process for inmate misbehavior hearings:

1.      For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

2.      For Tier II disciplinary hearings, the appeal is to the facility Superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

3.      For Tier I violation hearings, the appeal is to the facility Superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

Individual decisions or dispositions regarding inmate misbehavior reports and hearings, or inmate grievances, are not considered grievable matters; however, the policies, rules and

---

[63]      42 U.S.C. § 1997e.

[64]      *White v. The State of New York*, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002) (citing N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.7).

procedures of the disciplinary and grievance programs may be the subject of a grievance.[65]
Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he
has failed to exhaust his administrative remedies.[66]

However, the Second Circuit recently held that a three-part inquiry is appropriate where a
defendant contends that a prisoner has failed to exhaust his available administrative remedies, as
required by the PLRA.[67]  First, "the court must ask whether [the] administrative remedies [not
pursued by the prisoner] were in fact 'available' to the prisoner."[68]  Second, if those remedies
were available, "the court should . . . inquire as to whether [some or all of] the defendants may
have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or
whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop
one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."[69]
Third, if the remedies were available and some of the defendants did not forfeit, and were not
estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special
circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the
administrative procedural requirements."[70]

---

[65]     *See* 7 N.Y.C.R.R. § 701.3(e)(1), (2); *see also* N.Y. Dep't Corr. Serv. Directive
No. 4040 at III.E.

[66]     *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002); *Reyes v.
Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

[67]     *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).

[68]     *Hemphill*, 380 F.3d at 686 (citation omitted).

[69]     *Id.* [citations omitted].

[70]     *Id.* [citations and internal quotations omitted].

Here, I can find no evidence in the record (or even an allegation or argument by Plaintiff) that (1) the administrative remedies not pursued by Plaintiff were in fact "not available" to Plaintiff, (2) any of the Defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or any of the Defendants took actions that inhibited Plaintiff's exhaustion of remedies such as to estop those Defendants from raising Plaintiff's failure to exhaust as a defense, or (3) "special circumstances" exist justifying Plaintiff's failure to comply with the administrative procedural requirements.

As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment claim against Defendant Uhler due to Plaintiff's failure to exhaust his available administrative remedies.  Because sufficient grounds exist upon which to base a dismissal of this claim, it is not necessary to address Defendants' alternative argument that Plaintiff has adduced no evidence that Defendant Uhler was so impartial as to present "a hazard of arbitrary decisionmaking." However, in the interest of thoroughness, I will briefly do so.

## 2.    Failure to Adduce Evidence of Partiality

Defendants recite the correct legal standard governing claims of bias against prison disciplinary hearing officers.  (*See* Dkt. No. 49, Part 3, at 21-22 [Defs.' Mem. of Law].) Applying this standard, Defendants argue that Plaintiff's claim of improper bias against Defendant Uhler is based solely on the fact that Defendant Uhler found against Plaintiff on two of the five charges contained in Defendant Buffham's misbehavior report.  (Dkt. No. 49, Part 3, at 22 [Defs.' Mem. of Law].)  Plaintiff responds that his claim of improper bias is not only based on the fact that Defendant Uhler found against Plaintiff on two of the five charges; it is also based on the fact that Defendant Uhler's finding of guilt against Plaintiff on those two charges

28

was completely unsupported by the evidence.  (Dkt. No. 56, Plf.'s Mem. of Law, at 13-14.)

There are two problems with Plaintiff's argument.  First, he has adduced no evidence that Defendant Uhler's finding of guilt was completely unsupported by the evidence.  Indeed, the record completely contradicts Plaintiff's argument.[71]  Second, even if Plaintiff had adduced such evidence, he has adduced no evidence that Defendant Uhler's finding of guilt was caused by some type of bias (e.g., a conflict of interest, prejudice, etc.) rather than being caused by simple error.  His argument that the (allegedly) unsupported ruling itself constitutes evidence of bias is wholly circular and conclusory.  Plaintiff does not even specifically allege that Defendant Uhler suppressed evidence, distorted testimony, or failed to inform Plaintiff of the charges or evidence.  In any event, the record evidence would contradict such an allegation.[72]

As a result, I recommend that, in the alternative, the Court dismiss Plaintiff's Fourteenth Amendment claim against Defendant Uhler due to Plaintiff's failure to adduce any evidence of improper bias by Defendant Uhler.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 49) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed

---

[71]      (*See*, *e.g.*, Dkt. No. 49, Part 6, at C-24 [stating the evidence upon which Def. Uhler relied when reaching his determination of guilt], C-26 [indicating that Def. Buffham testified at the hearing].)

[72]      (*See*, *e.g.*, Dkt. No. 49, Part 6, at C-26 [indicating that Plf. did not request any witnesses, and that Def. Buffham testified at the hearing], C-23 [indicating that misbehavior report had been served on Plf.].)

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d

Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28

U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 14, 2006
        Syracuse, New York


George H. Lowe
United States Magistrate Judge